Joe P. Josephson, Esq.,
Alaska Bar number 6102018
Josephson Law Offices, LLC
912 West Sixth Avenue
Anchorage, Alaska 99501
Tel. (907) 276-0151
Facsimile (907) 276-0155
joejlaw@gmail.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DAVID HEAD, M.D., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) | Case No. 3:19-CV-00023-TMB <br><br> **Related Case:** *Head v. United States, et al.* <br> Case No. 2:18-civ-00002-JWcS |

# FIRST AMENDED COMPLAINT

For his complaint, the plaintiff, DAVID HEAD, M.D., by and through his attorney, Joe P. Josephson, Alaska Bar number 6102018, of Josephson Law Offices, LLC, 912 West Sixth Avenue, Anchorage, Alaska, complains against the defendant, UNITED STATES OF AMERICA as follows:

*Part One. General Allegations Applicable to Each Claim for Relief.*

1. Plaintiff is a resident and inhabitant of the State of Alaska, at Nome and is the former Chief of Staff and Medical Director for NORTON SOUND HEALTH CORPORATION (hereinafter "NSHC"). The plaintiff has lived in Nome, Alaska for approximately three decades.

Head v. United States of America
Case No. 3:19-CV-00023-TMB
Page **1** of **9**

Case 3:19-cv-00023-TMB   Document 10   Filed 04/05/19   Page 1 of 9

2. NSHC is a not-for-profit legal entity organized under the laws of Alaska.

3. NSHC's primary facility is a hospital located at or near Nome, Alaska. The United States Attorney for the District of Alaska has previously contended that NSHC, being a corporation organized under the laws of Alaska but managed or controlled, directly or indirectly, by an "Indian tribe" or "Indian tribes", is amenable to suit only in the United States District Court for the District of Alaska, and that the acts and omissions of its employees are cognizable, first, as acts or omissions of a federal employee of the United States Department of Health and Human Services.

4. The United States Department of Health and Human Services, pursuant to 28 C.F.R. sec. 14.9(a) has notified undersigned attorney for plaintiff that it deems the plaintiff's claim as not compensable under the Federal Tort Claims Act (FTCA). Furthermore, the United States Department of Health and Human Services informed the undersigned that if the plaintiff is dissatisfied with the denial of his claim under the FTCA, this suit may be filed in the United States District Court.

5. JACOB IVANOFF is the former Chair of NSHC Board of Directors and was Chair of the Corporation Board's Executive Committee.

6. ANGIE GORN is employed as NSHC's Chief Executive Officer and President.

7. Plaintiff commenced working for NSHC in July, 1988, and served for approximately 29 years as its Chief of Staff and Medical Director. However, plaintiff's most recent contract was scheduled to expire in April, 2018, but has now been terminated by NSHC and ANGIE GORN.

8. During his period of service as NSHC's Chief of Staff and Medical Director, plaintiff had attained many professional honors, including chairmanship of the Alaska State Medical Board for many years, and selection as Alaska Family Physician of the Year in 2014. During his period of service as Chief of Staff and Medical Director, plaintiff was instrumental in upgrading and improving the quality of medical services available to residents of Nome and of constituent villages; attracting a distinguished group of professional employees; creating NSHC's new facilities at Nome; and improving the NSHC's financial condition.

9. Another physician, Dr. Karen O'Neill, was employed by NSHC intermittently for over 40 years and is Board certified in Internal Medicine, Family Medicine, and Emergency Medicine. In 2016, Dr. O'Neill had allegedly been at fault by having allowed certain prescriptions for controlled substances to have been forged and circulated.

10. In the winter of 2017, NSHC's Board of Directors, led by JACOB IVANOFF and encouraged by ANGIE GORN, chastised plaintiff for having taken what they alleged had been a

> "less aggressive approach (which) ultimately led to aligning with Dr. Karen O'Neill, who had been suspended by the . . . Board of Directors for having allegedly allowed certain prescriptions of controlled substances to have been forged, and then circulated in Anchorage."

11. The allegation was based on the fact that the plaintiff, in keeping with written policies and rules at NSHC's hospital, correctly informed the Board of Directors that it could not suspend a doctor's privileges without consultation with the medical staff. (See

Head v. United States of America
Case No. 3:19-CV-00023-TMB
Page **3** of **9**

Case 3:19-cv-00023-TMB   Document 10   Filed 04/05/19   Page 3 of 9

Medical Staff By-Laws for Norton Sound Health Corporation, sections 6.2, 6.3 and Section 6.4).

12. The chastisement of the plaintiff, described above in paragraph 9, was unreasonable and untrue. It expressly accused the plaintiff of being "aligned" with another medical doctor who had been suspended for "having allegedly allowed certain prescriptions of controlled substances to have been forged, and then circulated in Anchorage." The accusation was false on two counts. First, it impliedly linked the plaintiff to wrongdoing. Second, it prejudged Dr. O'Neill who was ultimately exonerated after an investigation by competent authority.

13. Subsection 6.3-1 of the NORTON SOUND HEALTH CORPORATION MEDICAL STAFF BYLAWS, provides that the **Medical Staff** "is responsible for carrying out delegated peer review and quality assessment functions." Subsection 6.3-1 also provides that "Any person may provide information to the **Medical Staff** about the conduct, performance or competence of a Medical Staff member." It further provides that if "reliable information indicates" that a member of the Medical Staff "may have exhibited acts, demeanor, or conduct reasonably likely to be. . . detrimental to patient safety or to the delivery of quality patient care (or) unethical, unprofessional or illegal (or) contrary to the Medical Staff Bylaws, Rules and Regulations, or Medical Staff and Hospital or NSHC administrative policy", then the Chief of Staff shall promptly notify the Vice President – Hospital Services in writing of all requests for corrective action regarding a Medical Staff member and keep him fully informed of all action taken in connection therewith."

Accordingly, subsection 6-3-1 is to be taken by the Medical Staff, and that the Chief of the Medical Staff (formerly this plaintiff) is to keep the Vice President-Hospital Services "fully informed of all action taken in connection therewith."

14. Notwithstanding the quoted provisions from the Norton Sound Health Corporation on Medical Staff By-laws, the privileges of Dr. O'Neill were suspended by the *Board*, and without pay.

15. In suspending Dr. O'Neill without pay, NSHC's Board of Directors not only disregarded the Medical Staff By-laws; NSCH's Board of Directors, led by JACOB IVANOFF and encouraged by ANGIE GORN, acted, on plaintiff's information and belief, contrary to the advice of NSHC's in-house counsel as well as advice from counsel employed by the private law firm called Davis Wright Tremaine (hereinafter "DWT").

16.1. Moreover, the JACOB IVANOFF and ANGIE GORN caused the NSHC to unreasonably and unfairly chastise plaintiff for "aligning with Dr. O'Neill rather than (to) follow the intentions of the (NSHC's) Board and administration", complaining that "this resulted in rallying behavior of medical staff and a seemingly purposeful misalignment with Administration. . .".

16.2. JACOB IVANOFF and ANGIE GORN also professed to sign a letter to the State of Alaska Medical Board reporting Dr. O'Neill, and they placed a "Performance Improvement Notice" in plaintiff's personnel file, accusing plaintiff of misconduct. (On information and belief, the Alaska State Medical Board has since declined to punish or

penalize Dr. O'Neill and exonerated her from the assertions against her of either deliberate misconduct or professional negligence).

17. In 2017, ANGIE GORN informed plaintiff that, over his objection, the "Performance Improvement Notice will remain in your Personnel file and cannot be removed."

18. Although plaintiff's contract was not due to expire until April 30, 2018, NSHC paid him a salary buy-out of $97,450.16, and terminated his professional services effective February 3, 2018. Plaintiff is also henceforth denied use of the medical facilities and equipment at the NSHC's Nome hospital.

19. At all times pertinent, NSHC, JACOB IVANOFF, and ANGIE GORN, knew that the plaintiff is a long-time resident of Nome, Alaska, and knew that without hospital privileges at NORTON SOUND HEALTH CORPORATION it will be impossible for plaintiff to work productively as a medical doctor in Nome, Alaska, so as to mitigate his loss.

20. Although NSHC, JACOB IVANOFF, and ANGIE GORN treat what they have done as merely a refusal to renew a contract, in reality they have wrongfully terminated plaintiff's employment at NORTON SOUND HEALTH CORPORATION despite 29 continuous years of excellent service.

20.1. Plaintiff's previous action against NORTON SOUND HEALTH CORPORATION was treated as a claim under the Federal Tort Claims Act (FTCA), on the theory that plaintiff alleges negligent and wrongful acts or omissions of a federal

employee of the United States Department of Health and Human Services, inasmuch as NORTON SOUND HEATH CORPORATION is alleged to be under the aegis of one or more Alaska Native corporations or "tribes".

### *Part Two: First Claim for Relief: Damage to Plaintiff's Reputation*.

21. Plaintiff incorporates herein, in his First Claim for Relief, each and every allegation set forth above in paragraphs 1 through 20.1, as if the same were expressly reiterated herein.

22. By declining to re-employ plaintiff, and by the promulgation of press releases defaming his reputation, under the circumstances and at the time described above, NSHC, JACOB IVANOFF, and ANGIE GORN, and all and each of them, have caused plaintiff to sustain and suffer economic loss because of injury to his professional reputation. Moreover, the individuals actually intended to make plaintiff suffer such injury. The quantum of that economic loss, which is continuing, will be proved at trial.

### *Part Three: Second Claim for Relief. Intentional and Negligent Infliction of Emotional Distress*.

23. Plaintiff incorporates herein, in this Second Claim for Relief, each and every allegation set forth in paragraphs 1 through 22 above, as if these allegations were expressly reiterated herein.

24. By eliminating plaintiff as a physician at its hospital, and by declining to renew his employment as Chief of the Medical Staff, and by defaming plaintiff's character and competency, NSHC, JACOB IVANOFF, and ANGIE GORN have caused plaintiff to sustain and suffer emotional distress. Moreover, the individuals intended to inflict

emotional distress upon plaintiff. (In the alternative, if the fact-finder find that the infliction of emotional distress upon plaintiff was unintended, then the individuals should be held responsible for their negligent infliction of emotional distress upon plaintiff. In either event, the extent and nature of the distress caused to plaintiff will be proved at trial.

### Part Four. Third Claim for Relief. Defendants' Breach of the Covenant of Good Faith and Fair Dealing.

25. Plaintiff incorporates herein, in this, his Third Claim for Relief, each and every allegation set forth in paragraphs 1 through 24 above, as if these allegations were expressly reiterated herein.

26. By (a) failing to extend plaintiff's contract, upon the false grounds that plaintiff had not been sufficiently deferential to NSHC, JACOB IVANOFF, ANGIE GORN and the Board of Directors, and (b) by falsely stating and insinuating, by express words and by implication, that the plaintiff was "aligned" with a doctor who had allegedly acted improperly, and (c) by ousting him from its hospital as a physician, they breached the implied covenant of good faith and fair dealing which inures in every contract of employment entered into in Alaska.

WHEREFORE, plaintiff, for his complaint, respectfully requests that the United States District Court provide by the entry of appropriate orders, judgments and/or decrees the following relief and remedies:

a. that the Court accept and assume jurisdiction to hear and determine this case and controversy, and all aspects thereof;

b.  that the Court, and/or the jury summoned to decide this matter, adjudicate plaintiff's claims and award him money judgment against the defendants, jointly and severally, under each cause of action set forth above; and

c.  that the Court award and grant to plaintiff such other, further, or different relief whether in law or in equity, which the Court may find just and proper, as well as costs and attorney fees plaintiff has incurred, or will incur, in the prosecution of this action.

DATED at Anchorage, Alaska, this 5th day of April, 2019.

Respectfully submitted:

/s/
Joe P. Josephson
Alaska Bar no. 6102018
Josephson Law Offices, LLC
912 West Sixth Avenue
Anchorage, Alaska  99501
Tel. (907) 276-0151
Fax (907) 276-0155
joejlaw@gmail.com