IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

DAVID HEAD, M.D.,

                           Plaintiff,

v.

UNITED STATES OF AMERICA,

                           Defendant.

Case No. 3:19-cv-00023-TMB

**ORDER ON DEFENDANT'S MOTION TO DISMISS (DKT. 18)**

## I.    INTRODUCTION

The matter comes before the Court on the United States' Motion to Dismiss for Lack of Jurisdiction (the "Motion").[1] The United States moves to dismiss Plaintiff Dr. David Head's First Amended Complaint ("Amended Complaint")[2] for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Head opposes the Motion.[3] At Head's request,[4] the Court heard oral argument on the Motion on October 9, 2019.[5] The Motion has been fully briefed and is now ripe for resolution.[6] For the reasons stated below, the United States' Motion to Dismiss is **GRANTED**.

---

[1] Dkt. 18 (Motion).

[2] Dkt. 10 (Amended Complaint).

[3] Dkt. 20 (Response in Opposition).

[4] Dkt. 23 (Motion for Hearing).

[5] Dkt. 34 (Minute Entry for Proceedings).

[6] Dkts. 18, 20, 22 (Reply).

1

## II. BACKGROUND

Head was the Chief of Staff and Medical Director at Norton Sound Health Corporation ("NSHC"), a Nome-based tribal health organization, for approximately twenty-nine years.[7] According to Head, this dispute began in 2016 when a NSHC-affiliated physician, Dr. Karen O'Neill, was suspected of allowing prescriptions for controlled substances to be forged and circulated.[8] Head claims that he informed the NSHC Board of Directors ("the Board") that per NSHC's policies it could not suspend O'Neill's privileges without consulting the medical staff.[9] As a result, in 2017, Head claims he was "chastised" by the Board for taking a "less aggressive approach [which] ultimately led to aligning with Dr. Karen O'Neill rather than [to] follow the intentions of the [NSHC's] Board and administration . . . ."[10] Head maintains that the statements of the Board of Directors, led at the time by Jacob Ivanoff, were "unreasonable and untrue."[11] Nevertheless, Ivanoff and NSHC's CEO, Angie Gorn, allegedly placed a "Performance Improvement Notice" in Head's personnel file.[12]

Head's contract was set to expire on April 30, 2018.[13] However, on February 3, 2018, NSHC paid Head a salary buyout of $97,450.16 and terminated his services.[14] NSHC also

---

[7] Dkts. 10 at 2, 18 at 2.

[8] Dkt. 10 at 3.

[9] *Id.*

[10] *Id.* at 5.

[11] *Id.* at 4.

[12] *Id.* at 5.

[13] *Id.* at 6.

[14] *Id.*

terminated Head's privileges at the NSHC hospital, which, Head asserts, makes it impossible for him to work as a physician in Nome.[15] Additionally, Head alleges that NHSC issued certain press releases after his contract was terminated.[16] Head claims that these press releases were intended to inflict damage to his professional reputation and harm him economically.[17]

Likewise, Head claims that by terminating him, NHSC, Ivanoff, and Gorn intentionally—or at least negligently—caused him to suffer emotional distress.[18] Lastly, Head claims that by failing to extend his contract upon false grounds, falsely implying that he was "aligned" with a doctor accused of wrongdoing, and terminating his privileges, NSHC, Ivanoff, and Gorn "breached the covenant of good faith and fair dealing which inures in every contract of employment entered into in Alaska."[19]

On January 30, 2019, Head filed a Complaint against NSHC, Ivanoff, and Gorn. Head's original Complaint raised three claims for relief against the NSHC, Ivanoff, and Gorn arising out of his termination: (1) "Damage to [his] Reputation," (2) "Intentional and Negligent Infliction of Emotional Distress," and (3) "Breach of the Covenant of Good Faith and Fair Dealing."[20] NSHC, Ivanoff, and Gorn filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction on March 15, 2019.[21] They asserted that NSHC, Ivanoff, and Gorn were deemed to be federal employees acting

---

[15] *Id.*

[16] *Id.* at 7.

[17] *Id.* at 7. The pleadings do not describe the contents of the press releases with any specificity.

[18] *Id.* at 7–8.

[19] *Id.* at 8.

[20] Dkt. 1 at 7–9 (Complaint).

[21] Dkt. 6 (NSHC, Ivanoff, and Gorn's Motion to Dismiss).

3

pursuant to the Indian Self-Determination and Education Assistance Act ("ISDEAA").[22] Therefore, they argued, the claims could only properly be brought against the United States under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671-80.[23]

Before the Court could rule on NSHC, Ivanoff, and Gorn's Motion to Dismiss, Head filed his Amended Complaint on April 5, 2019.[24] The Amended Complaint removed the original defendants and named only the United States as defendant.[25] Head now seeks damages from the United States on the three claims for relief raised in Head's original Complaint—*i.e.* (1) damage to Head's reputation, (2) intentional and negligent infliction of emotional distress, and (3) breach of the covenant of good faith and fair dealing implied in Head's employment contract.[26]

On July 15, 2019, the United States filed the present Motion pursuant to Fed. R. Civ. P. 12(b)(1).[27] The United States makes a facial challenge to the Court's subject matter jurisdiction over any of Head's claims.[28] It argues that, even assuming the truth of Head's claims, his suit is barred by federal sovereign immunity.[29] Specifically, the United States contends that each of Head's claims are barred under the "intentional torts exception" to the FTCA or as claims which

---

[22] 25 U.S.C. § 5301 *et seq*, Dkt. 7 at 4 (Memorandum in Support). It is undisputed that, at all times relevant to Head's claims, the acts or omissions of NSHC and its employees were acts or omissions of an employee of the United States Department of Health and Human Services. Dkts. 27 (Response to Order), 31 (Supplement by David Head).

[23] Dkt. 7 at 4.

[24] Dkt. 10.

[25] *Id.* at 1.

[26] *Id.* at 7–9.

[27] Dkt. 18.

[28] *Id.* at 4.

[29] *Id.* at 5.

otherwise arise out of barred claims.[30] The Motion was fully briefed by the Parties and the Court held oral argument on the Motion on October 9, 2019.[31]

### III. LEGAL STANDARD

"The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction."[32] A party may seek dismissal of an action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). In order to survive a defendant's motion to dismiss, the plaintiff has the burden of proving jurisdiction.[33] A Rule 12(b)(1) motion may raise a facial or factual challenge to the court's subject matter jurisdiction.[34] A facial challenge is directed at the legal sufficiency of a claim.[35] When assessing a Rule 12(b)(1) facial challenge to the court's subject matter jurisdiction, the court "assume[s] [movant's] allegations to be true and draw all reasonable inferences in [their] favor."[36] "The court will not dismiss a claim under 12(b)(1) unless it appears without any merit."[37]

---

[30] Dkt. 18 at 5.

[31] Dkt. 34 (Minute Entry for Hearing on Motion to Dismiss).

[32] *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

[33] *Tosco v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2000); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

[34] *Mitchell v. U.S. Dep't of Air Force*, No. 3:10-CV-00263-TMB, 2012 WL 12919216, at *2 (D. Alaska Mar. 23, 2012), aff'd sub nom. *Mitchell v. U.S. Dep't of the Air Force*, 540 F. App'x 600 (9th Cir. 2013) (citing James W. Moore, Moore's Federal Practice, § 12.30[4] at 12-38 (3d ed. 1977) ("Moore")).

[35] *Id.*; *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004).

[36] *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

[37] *Alaska Right to Life Political Action Comm. v. Feldman*, No. A04-0239CV (RRB), 2005 WL 1862372, at *1 (D. Alaska July 26, 2005) (citing Moore, § 12.30[4] at 12–38 n. 12).

## IV. ANALYSIS

Head asserts three claims for relief against the United States: (1) damage to his reputation, (2) intentional and negligent infliction of emotional distress, and (3) breach of the covenant of good faith and fair dealing.[38] The United States makes a facial challenge to the Court's subject-matter jurisdiction over any of Head's claims.[39] It argues that, even assuming the truth of the Head's claims, his suit is barred by federal sovereign immunity.[40]

"It is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued."[41] Courts must strictly construe the scope of any waiver of sovereign immunity in favor of the United States.[42] If a plaintiff lacks a specific waiver of sovereign immunity for his claim against the United States, then the suit fails for want of subject matter jurisdiction.[43]

Under the FTCA, the United States has provided a limited waiver of its sovereign immunity.[44] Excepting certain claims, the FTCA provides that the United States may be found liable in a tort action "in the same manner and to the same extent as a private individual under like circumstances."[45] Consequently, courts only have jurisdiction over tort actions against the United

---

[38] Dkt. 10 at 7–9.

[39] Dkt. 18 at 4.

[40] *Id.* at 4–5.

[41] *Orff v. United States*, 358 F.3d 1137, 1142 (9th Cir. 2004) (quotations omitted).

[42] *Id.*

[43] *Id.*

[44] 28 U.S.C. § 2674.

[45] *Id.*

6

States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[46] Accordingly, to determine whether a court has jurisdiction over claims against the United States, it must assess whether the plaintiff's claim is one which falls within the scope of FTCA's waiver. The Court looks to each of Head's claims in turn.

  A. *Whether Head's Claim for "Damage to [his] Reputation" Falls Outside of the Federal Torts Claims Act's Waiver of Sovereign Immunity*

Head alleges that by declining to renew his contract and issuing certain press releases, NSHC, Ivanoff, and Gorn caused injury to his professional reputation.[47] The United States recognized in briefing and at oral argument that "damage to reputation" is not a claim that is explicitly excepted from the FTCA.[48] However, the United States argues that Head's claim is an incognito defamation claim, which is expressly barred by the FTCA.[49] Head did not advance any arguments in his Response or at oral argument to refute the United States' contention or to support his "damage to reputation" claim as justiciable under the FTCA.

The FTCA provides that its waiver of sovereign immunity generally does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]"[50] To discern whether a claim "arises out of" one of the FTCA's enumerated torts, courts must look

---

[46] 28 U.S.C. § 1346(b)(1).

[47] Dkt. 10 at 7.

[48] Dkts. 18 at 5; 34.

[49] Dkt. 18 at 5–8.

[50] 28 U.S.C. § 2680(h).

7

beyond a plaintiffs' classification of the cause of action and determine "whether the conduct upon which the claim is based constitutes one of the torts listed in § 2680(h)."[51] Courts will not allow plaintiffs to circumvent sovereign immunity by creatively pleading barred claims.[52] The FTCA expressly bars defamation suits against the United States.[53] Under Alaska law, "[t]he elements of a defamation claim are: (1) a false and defamatory statement; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence; and (4) either per se actionability or special reputation of another so as to lower [the plaintiffs] in the estimation of the community or deter third persons from associating or dealing with" the plaintiffs.[54]

Here, Head alleges "damage to [his] reputation."[55] He claims the United States should be held liable for terminating his professional service contract and subsequently publishing press releases "defaming his reputation."[56] For reasons discussed below, to the extent Head's damage to reputation claim relies on his allegation that NSHC, Ivanoff, and Gorn wrongfully terminated his professional service contract, his claim is barred under the FTCA as arising from an employment

---

[51] *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996), as amended (Sept. 26, 1996) (citing *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir. 1990) ("[W]e look beyond [the complaint's] characterization [of the cause of action] to the conduct on which the claim is based.") and *Thomas–Lazear v. Federal Bureau of Investigation*, 851 F.2d 1202, 1207 (9th Cir. 1988) ("This circuit looks beyond the labels used to determine whether a proposed claim is barred [by the intentional torts exception]")).

[52] *Id. See, e.g.*, *Hoesl v. United States*, 629 F.2d 586, 587 (9th Cir. 1980)

[53] 28 U.S.C. § 2680(h) (providing that the FTCA does not extend to claims arising out of "libel" or "slander"). *Sabow*, 93 F.3d at 1456.

[54] *Alaska v. Carpenter*, 171 P.3d 41, 51 (Alaska 2007)

[55] Dkt. 10 at 7.

[56] *Id.*

8

contract claim.[57] Additionally, Head's allegations related to the press releases align squarely with a defamation claim. First, he alleges the falsity of information used and published by those at NSHC.[58] Second, he alleges that—through press releases—the information was published to the community at-large.[59] Third, he alleges this was done intentionally.[60] Fourth, he alleges that the published information related directly to his reputation as a physician in the community, which is actionable *per se*.[61] Head's claim, despite what he chooses to call it, is a defamation claim barred under the FTCA.

Accordingly, the United States' Motion to Dismiss as to Head's first claim for relief is **GRANTED**.

B. *Whether Head's Claims for Infliction of Emotional Distress Fall Outside of the Federal Torts Claims Act's Waiver of Sovereign Immunity*

Head alleges that because NSHC, Ivanoff, and Gorn declined to renew his contract and "defam[ed]" his character and competency, the United States is liable for intentional infliction of emotional distress ("IIED") or, alternatively, negligent infliction of emotional distress ("NIED" or, collectively "IIED/NIED").[62] The United States advances two arguments for dismissing Head's

---

[57] *Infra* Section C.

[58] Dkt. 10 at 4.

[59] *Id.* at 7.

[60] *Id.*

[61] *Id. See Greene v. Tinker*, 332 P.3d 21, 39 (Alaska 2014) (quoting Restatement (Second) of Torts §§ 570, 573 (1977)) (holding that among the categories of publications that are defamatory *per se* are statements that impute to the plaintiff "conduct . . . that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession.").

[62] Dkt. 10 at 7–8.

9

second claim.[63] First, that Head's IIED/NIED claims "arise out of" torts barred under the FTCA.[64] Second, that a private party in a similar situation would not be liable because Head's pleadings fail to state the claims.[65]

As above, the courts must look beyond a plaintiff's classification of the cause of action and determine "whether the conduct upon which the claim is based constitutes one of the torts listed in § 2680(h)."[66] Courts will not allow plaintiffs to circumvent sovereign immunity by creatively pleading barred claims.[67] Claims for IIED/NIED are not barred, *per se* under the FTCA.[68] However, courts have barred IIED/NIED claims for relying too closely on allegations of defamation.[69] For instance, in *Thomas-Lazear*, the court found that where "the Government's

---

[63] Dkt. 18 at 10.

[64] *Id.*

[65] *Id.* The Court is not persuaded that the United States' second argument is properly brought as a motion to dismiss under Rule 12(b)(1) rather than a motion to dismiss under 12(b)(6). The argument does not address whether the Court categorically lacks jurisdiction to hear such claims under the FTCA but instead looks to whether in this particular instance Head has adequately stated the claim. Nevertheless, the Court finds it unnecessary to make a determination on the United States' second argument because, as discussed below, Head's IIED/NIED claims arise out of barred claims. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). (holding a court must decide subject-matter jurisdiction before addressing matters under 12(b)(6)).

[66] *Sabow*, 93 F.3d at 1456 (citing *Mt. Homes, Inc.*, 912 F.2d at 356 ("[W]e look beyond [the complaint's] characterization [of the cause of action] to the conduct on which the claim is based.") and *Thomas–Lazear*, 851 F.2d at 1207 ("This circuit looks beyond the labels used to determine whether a proposed claim is barred [by the intentional torts exception]")).

[67] *Id. See e.g., Hoesl*, 629 F.2d at 587.

[68] *Sabow*, 93 F.3d at 1454–57. *See also Gasho v. United States*, 39 F.3d 1420, 1436 (9th Cir. 1994); *Sheehan v. United States*, 896 F.2d 1168, 1172 (9th Cir. 1990), amended, 917 F.2d 424 (9th Cir. 1990).

[69] *See, e.g.*, *Davenport v. United States Dep't of Homeland Sec.*, No. CV18-00625-PHX-DGC, 2018 WL 6181240, at *2 (D. Ariz. Nov. 27, 2018) (dismissing "[p]laintiff's claims for slander, libel, misrepresentation, and deceit, and all claims arising from the same conduct [*i.e.* defamation, negligence, harassment, and intentional and negligent infliction of emotional distress]");

actions that constitute a claim for slander are essential to [plaintiff's] claim for negligent infliction of emotional distress" the claims arise out of barred intentional torts.[70] In other words, if the conduct which gives rise to a claim of defamation is stricken from the complaint and leaves "no other government conduct upon which [a claim] can rest," the entire claim arises out of defamation and is barred.[71]

Here, Head alleges that by "defaming [his] character and competency" NSHC caused Head to suffer emotional distress.[72] An IIED/NIED claim based on defamatory statements attributable to the United States necessarily arises from defamation. Head cannot, therefore, rely on NSHC's publishing of allegedly defamatory statements to support his IIED/NIED claim. However, Head also alleges that by failing to renew his employment NSHC caused him to suffer emotional distress.[73] This allegation may be independent from those which constitutes defamation. However, for reasons discussed below, Head's IIED/NIED claim, to the extent that it relies on a wrongful termination theory, is barred under the FTCA as arising from a contract claim.[74] Therefore, both allegations contained within Head's IIED/NIED claim arise from barred claims under the FTCA.

---

*Powerturbine, Inc. v. United States*, No. 3:14-CV-0435-CAB-BLM, 2014 WL 12160753, at *13 (S.D. Cal. Dec. 15, 2014) (holding "because the negligence, IIED, and privacy claims arise from this alleged defamation, the claims are barred under section 2680(h)"). *Cf. Michel v. United States*, No. 16CV277-GPC-AGS, 2017 WL 5067608, at *17 (S.D. Cal. Oct. 31, 2017), *reconsideration denied*, No. 16CV277-GPC-AGS, 2018 WL 840175 (S.D. Cal. Feb. 13, 2018) (holding that an IIED/NIED claim is barred under the FTCA where it relies on facts that support a false imprisonment claim which is expressly barred under the FTCA).

[70] *Thomas–Lazear*, 851 F.2d at 1207.

[71] *Id.*

[72] Dkt. 10 at 7–8.

[73] *Id.*

[74] *Infra* Section C.

11

Accordingly, the United States' Motion to Dismiss as to Head's second claim for relief is **GRANTED**.

C. *Whether Head's Claim for Breach of the Covenant of Good Faith and Fair Dealing Falls Outside of the Federal Torts Claims Act's Waiver of Sovereign Immunity*

Head alleges that by: (1) declining to re-employ him upon false grounds, (2) falsely stating that he was "aligned" with a doctor accused of impropriety, and (3) "ousting" him from the hospital, NSHC, Ivanoff, and Gorn "breached the implied covenant of good faith and fair dealing which inures in every contract . . . ."[75] The United States argues that this is a contract claim barred by the FTCA.[76] In response, Head argues that Alaska law considers a claim for the breach of the covenant of good faith and fair dealing an independent tort claim.[77]

The FTCA expressly bars contract claims against the federal government.[78] Generally, to determine whether a particular claim sounds in contract or in tort, courts apply state law.[79]

---

[75] Dkt. 10 at 8.

[76] Dkt. 18 at 8–10.

[77] Dkt. 20 at 9–12.

[78] 28 U.S.C.A. § 1346(a)(2) ("[T]he district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort . . .").

[79] *LaBarge v. Mariposa Cty.*, 798 F.2d 364, 366 (9th Cir. 1986) (The FTCA "direct[s] the courts to analogize the government to a private actor in a similar situation and apply state law to determine amenability to suit and substantive liability."). *Compare Love v. United States*, 915 F.2d 1242, 1247 (9th Cir. 1989), abrogated on other grounds by *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019) (holding that where Montana courts had held that the breach of the duty of good faith was a separate tort, it was a cognizable claim under the FTCA) *with Winchell v. U.S. Dep't of Agric.*, 961 F.2d 1442, 1444 (9th Cir. 1992) (holding that, despite *Love*, where Montana had begun to categorize the breach of the duty of good faith as a contract claim, the claim no longer could be brought under the FTCA).

12

Therefore, the question becomes whether Alaska courts find that a claim for the breach of the covenant of good faith and fair dealing sounds in tort or contract.

Here, the parties dispute how Alaska law categorizes Head's claim.[80] Specifically, the parties disagree about how this Court should interpret the Alaska Supreme Court's decision in *ARCO Alaska, Inc. v. Akers*.[81] In that case, the plaintiff sued his former employer, claiming that the circumstances of his termination breached the covenant of good faith and fair dealing in his employment contract.[82] The jury returned a verdict against his employer which included punitive damages—a remedy ordinarily reserved for tort claims.[83] The court noted that under Alaska law "[p]unitive damages are not recoverable for breach of contract unless the conduct constituting the breach constitutes an independent tort."[84] Therefore, the question for the *ARCO* Court was whether "breach of the covenant of good faith and fair dealing…constitutes a tort as well as a breach of contract."[85] The Supreme Court of Alaska held that "it does not."[86]

Head challenges this reading of the *ARCO* decision.[87] Head appears to center his argument on the *ARCO* Court's comment, "[w]here a party's conduct in breaching a contract rises to the level of a traditionally recognized tort, such as intentional infliction of emotional distress, an action

---

[80] Dkt. 18 at 8–10.

[81] 753 P.2d 1150 (Alaska 1988). Dkts. 18 at 9; 20 at 9–11.

[82] *Id.* at 1152–53.

[83] *Id.* at 1153.

[84] 753 P.2d at 1153.

[85] *Id.*

[86] *Id.*

[87] Dkt. 20 at 9–11.

13

in tort would lie."[88] Head seems to argue the breach of the implied covenant of good faith and fair dealing may give rise to both contract and tort claims.[89]

However, this reading misconstrues *ARCO's* fundamental holding that "mere breach of the implied covenant of good faith and fair dealing…does not constitute a tort."[90] The language on which Head relies does not create an exception to this holding. Rather, the *ARCO* Court noted that an employer's conduct in breaching the implied duty—not the breach itself—may be so egregious to give rise to a separate tort claim such as IIED. Such a claim would not be merged into breach of the covenant of good faith and fair dealing, nor would it convert a claim for breach into a separate tort.

In his Response and at oral argument, Head also cited *State Farm Fire & Cas. Co. v. Nicholson*[91] for the proposition that breach of the covenant of good faith and fair dealing constitutes a tort under Alaska law.[92] However, that case concerned an insurance contract.[93] When the *Nicholson* plaintiffs brought suit against their insurer for breaching its duty to act in good faith while processing their claims, the jury awarded the plaintiffs compensatory damages and punitive damage.[94] The *Nicholson* Court, in order to incentivize insurers to act in good faith with their

---

[88] 753 P.2d at 1154.

[89] Dkt. 20 at 10–11.

[90] 753 P.2d at 1154.

[91] 777 P.2d 1152, 1156–57 (Alaska 1989).

[92] Dkt. 20 at 12.

[93] 777 P.2d at 1152–54.

[94] *Id.* at 1153.

insured, held that "an insurer's bad faith failure to settle a first-party claim is a tort."[95] *Nicholson*'s holding was limited to the insurance context.[96] In fact, the *Nicholson* Court explained

> In *ARCO* . . . we ruled that an employer's breach of the duty of good faith and fair dealing implied in an employment contract is a breach of contract which does not constitute an independent tort. However, employment contracts are substantially different from insurance contracts. Therefore, we do not extend [*ARCO*] to the insurance context.[97]

This language clarifies that *ARCO* does not support Head's proposition. Furthermore, it shows that *Nicholson* did not upset *ARCO's* holding but instead limited the tort arising from the breach of the covenant of good faith and fair dealing to insurance contracts. Therefore, Alaska law classifies Head's third claim sounds in contract and, thus, is not properly brought under the FTCA.

Accordingly, the United States' Motion to Dismiss as to Head's third claim for relief is **GRANTED**.

## V. CONCLUSION

For the foregoing reasons, the United States' Motion to Dismiss at docket 18 is **GRANTED**. This case is **DISMISSED** without prejudice. The Clerk of Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 28 day of October, 2019.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[95] *Id.* at 1157.

[96] *Id.* at 1154–57.

[97] *Id.* at 1156.